UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

JOSE ALEJANDRO ZAPATA
VELASQUEZ,

Petitioner,

v.

KRISTI NOEM, Secretary of the
Department of Homeland Security; et al.,

Respondents.

Case No.: 26-cv-0746-BJC-MMP

**ORDER GRANTING IN PART
PETITION FOR WRIT OF HABEAS
CORPUS**

**[ECF Nos. 1, 2, 7]**

Before the Court is Jose Alejandro Zapata Velasquez's ("Petitioner") writ of habeas corpus. ECF No. 1, along with a motion for a temporary restraining order, ECF No. 2, that were both filed on February 6, 2026. On February 13, 2026, Respondents filed a return, ECF No. 5, and on February 20, 2026, Petitioner filed a traverse. ECF No. 6. For the reasons set forth below, the Court **GRANTS IN PART** Petitioner's Petion for Writ of Habeas Corpus (ECF No. 1) and **DENIES AS MOOT** Petitioner's Motion for Temporary Restraining Order (ECF No. 2) and **DENIES AS MOOT** Motion to Expedite Ruling and Supplemental Briefing. (ECF No. 7).

## I.    <u>BACKGROUND</u>

Petitioner is a native and citizen of Mexico. (ECF No. 1at 2; Velasquez Decl. Ex. A at ¶ 1). On November 13, 2023, Petitioner entered the United States through the San Ysidro Port of Entry, seeking asylum with his wife and young child. (*Id.* at ¶ 2*)* He was detained overnight and released the following day on parole, valid through November 11, 2024. (ECF No. 5 at 2; Ex.1 (I-94 Screenshot)). After his release, Petitioner was issued a Social

Security number and a work permit, and he secured employment with an appliance delivery company. (*Id*. at ¶¶ 2,4-5).

On November 26, 2025, Petitioner was making a delivery at Camp Pendleton. (ECF No. 1 at 2). Upon arrival, he was asked to exit the delivery truck. (*Id*. at 3). Agents from Immigration and Customs Enforcement ("ICE") arrived, placed him under arrest, and transferred him to immigration custody. (*Id*.) That same day, the Department of Homeland Security ("DHS") issued a Notice to Appear, thereby initiating removal proceedings against Petitioner.

While Petitioner was being held in a detention cell, an ICE agent informed him that he was being detained because he lacked lawful status in the United States. (*Id*.) ICE provided no further explanation for Petitioner's re-detention and did not afford him an interview or any opportunity to contest the basis for his detention. (*Id*.) Petitioner has remained in detention since his arrest on November 26, 2025. (*Id*.)

On December 3, 2025, DHS filed a Form I-261, correctly charging Petitioner as inadmissible under 8 U.S.C. § 1182(a)(7)(A)(i)(I), as an alien not in possession of an unexpired immigrant visa, reentry permit, border crossing card, or other valid entry document required by the Immigration and Nationality Act.

## II.    <u>LEGAL STANDARD</u>

A writ of habeas corpus is "available to every individual detained within the United States." *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. Const., Art. I, § 9, cl. 2). "The essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973). Under 28 U.S.C. § 2241, a district court has the authority to grant a writ of habeas corpus when the petitioner "is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). The Petitioner bears the burden of demonstrating that "[h]e is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3).

## III.   DISCUSSION

### A.   Jurisdiction Under 8 U.S.C. § 1252(g)

Under 8 U.S.C. § 1252(g), except as otherwise stated, "no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any alien under this chapter."  The Ninth Circuit has made clear, however, that § 1252(g) must be read "narrowly" as to apply "only to three discrete actions that the Attorney General may take: her 'decision or action' to 'commence proceedings, adjudicate cases, or execute removal orders.'" *Ibarra-Perez v. United States*, No. 24-631, at *6, *14–15 (9th Cir. Aug. 27, 2025) (emphasis in original).  Section 1252(g) "does not prohibit challenges to unlawful practices merely because they are in some fashion connected to removal orders." *Id.* at *18.  Specifically, § 1252(g) does not bar due process claims. *Walters v. Reno*, 145 F.3d 1032, 1032 (9th Cir. 1998).  "[The plaintiffs'] objective was not to obtain judicial review of the merits of their . . . proceedings, but rather to enforce their constitutional rights to due process in the context of those proceedings." *Id.* at 1052.

The Court concludes that it has jurisdiction.  Petitioner is not challenging Respondents' decision to execute a removal order, which would bar this Court's review.  Instead, she challenges the legality of his detention based on alleged violations of statutory, regulatory, and constitutional duties.  Such claims fall squarely within the Court's habeas authority. *See Arce v. United States*, 899 F.3d 796, 800 (9th Cir. 2018) ("[W]e have limited [1252(g)]'s jurisdiction-stripping power to actions challenging the Attorney General's discretionary decisions to initiate proceedings, adjudicate cases, and execute removal orders."); *accord Kong v. United States*, 62 F.4th 608, 617 (1st Cir. 2023) (interpreting 1252(g) to allow jurisdiction over detention challenges).

### B.   Revocation of Parole

The Due Process Clause guarantees that "an individual be given an opportunity for a hearing *before* he is deprived of any significant property interest." *Cleveland Board of Education v. Loudermill,* 470 U.S. 532, 542(1985); *see also Zinermon v. Burch*, 494 U.S.

26-cv-0746-BJC-MMP

113, 127 (1990).  The Clause applies to "all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent." *Zadvydas v. Davis*, 533 U.S. 678, 693 (9th Cir. 2001). Consistent with this principle, "[c]ourts have repeatedly held that [a noncitizen's] liberty interests do not expire when parole does." *Osaretin v. Warden, Otay Mesa Det. Ctr.*, No. 25-CV-3612-JES-MSB, 2026 WL 280077, at *2 (S.D. Cal. Feb. 3, 2026); *see also Rahman v. Casey*, No. 36-CV-646-JLS-MMP, 2026 WL 512878 (S.D. Cal. Feb. 23, 2026).

When determining what procedures satisfy due process, courts apply the balancing framework established in *Matthews v. Eldridge*, 424 U.S. 319, 335 (1976). Under that test, courts consider:

> (1) "the private interest that will be affected by the official action"; (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards"; and (3) "the Government's interest including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail."

*Id.*

The Court finds that all three factors support a finding that the Government's revocation of Petitioner's parole without notification, reasoning, or an opportunity to be heard denied Petitioner his due process rights.  First, Petitioner has a liberty interest in remaining out of custody pursuant to his parole.  "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty [the Due Process Clause] protects." *Zadvydas*, 533 U.S. at 690.  Petitioner has an interest in remaining with and providing for his family and continuing the asylum process. *See Morrissey*, 408 U.S. 471 at 482 ("Subject to the conditions of his parole, he can be gainfully employed and is free to be with family and friends and to form the other enduring attachments of normal life.").

Second, the risk of an erroneous deprivation of such interest is high as Petitioner's parole was revoked without providing him a reason for revocation or giving him an

26-cv-0746-BJC-MMP

opportunity to be heard.  (ECF No. 1 at 3).  Since DHS's initial determination that Petitioner should be paroled because he posed no danger to the community and was not a flight risk, there is no evidence that these findings have changed.  *See Saravia v. Sessions*, 280 F. Supp. 3d 1168,1760 (N.D. Cal. 2017) ("Release reflects a determination by the government that the noncitizen is not a danger to the community or a flight risk.")  Here, Petitioner has no criminal record, has not been arrested or otherwise in criminal trouble, has work authorization, and has filed an asylum application.  (ECF No. 1 at 4; ECF No. 6 at 2, 5).

"Once a noncitizen has been released, the law prohibits federal agents from rearresting him merely because he is subject to removal proceedings.  Rather, the federal agents must be able to present evidence of materially changed circumstances—namely, evidence that the noncitizen is in fact dangerous or has become a flight. . . ." *Saravia*, 280 F. Supp. 3d at 1760.  Respondents, failing to address Petitioner's Due Process argument in their response, do not point to any material circumstances that have changed that would warrant reconsideration of his parole.  *See generally* Ret.  "Where as here, 'the petitioner has not received any bond or custody hearing,' 'the risk of an erroneous deprivation of liberty is high' because neither the government nor [Petitioner] has had an opportunity to determine whether there is any valid basis for [his] detention." *Pinchi*, 2025 WL 2084921, at *5 (quoting *Singh v. Andrews,* No. 25-cv-901-KES-SKO )HC), 2025 WL 1918679, at *7 (E.D. Cal. July 11, 2025)) (cleaned up).

Third, the Government's interest in detaining Petitioner without notice, reasoning, and a hearing is "low."  *See Pinchi*, 2025 WL 2084921, at *5; *Matute*, 2025 WL 2817795, at *6; *Ortega v. Bonnar*, 415 F. Supp. 3d 963, 970 (N.D. Cal. Nov. 22, 2019) ("If the government wishes to re-arrest [Petitioner] at any point, it has the power to take steps toward doing so; but its interest in doing so without a hearing is low.").  Respondents fail to point to any burdens on the Government if it were to have provided proper notice, reasoning, and a pre-deprivation hearing.  *See generally* Ret.

Therefore, because Respondents detained Petitioner by revoking his parole in

violation of the Due Process Clause, his detention is unlawful. *See, e.g., Alegria Palma v. Larose et al.*, No. 25-cv-1942 BJC (MMP), slip op. 14 (S.D. Cal. Aug. 11, 2024) (granting a TRO based on a procedural due process challenge to a revocation of parole without a pre-deprivation hearing); *Navarro Sanchez*, 2025 WL 2770629, at *5 (granting a writ of habeas corpus releasing petitioner from custody to the conditions of her preexisting parole on due process grounds).

## IV.    CONCLUSION

Based on the foregoing, the Court **GRANTS IN PART** Petitioner's Petition for Writ of Habeas Corpus (ECF No. 1) and **DENIES AS MOOT** Petitioner's Motion for a Temporary Restraining Order (ECF No. 2).   The Court **ORDERS** Respondents to immediately release Petitioner from custody subject to the conditions of his preexisting parole.   The Court **ORDERS**, prior to any re-detention of Petitioner, that Petitioner is entitled to notice of the reasons for revocation of his parole and a hearing before a neutral decision maker to determine whether detention is warranted.   The Government shall bear the burden of establishing, by clear and convincing evidence, that Petitioner poses a danger to the community or a risk of flight.[1]

**IT IS SO ORDERED.**

Dated:  April 14, 2026

Honorable Benjamin J. Cheeks
United States District Judge

---

[1] This relief has been granted in similar matters.  *See, e.g.*, *Matute*, 2025 WL 2817795, at *8; *Pinchi*, 2025 WL 2084921, at *5; *Doe v. Becerra*, 787 F. Supp. 3d 1083, 1097 (E.D. Cal. 2025); *Martinez Hernandez v. Andrews*, No. 25-CV-1035 JLT HBK, 2025 WL 2495767, at *14 (E.D. Cal. Aug. 28, 2025).

26-cv-0746-BJC-MMP